UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MAHMOUD ISLEEM ET AL. | * | CIVIL ACTION NO. 24-559 |
| | * | |
| VERSUS | * | SECTION: "A"(3) |
| | * | |
| SANDRA PEACOCK ET AL. | * | JUDGE JAY C. ZAINEY |
| | * | |
| | * | MAGISTRATE JUDGE EVA J. DOSSIER |
| | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### ORDER AND REASONS

The following motion is before the Court: **Motion to Dismiss (Rec. Doc. 8)**, filed by Defendants, Nicole DeCuir, Sandra Peacock, and United States Citizenship and Immigration Services ("USCIS"). The plaintiffs oppose the motion. The motion, submitted for consideration on June 26, 2024, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is **GRANTED**.

### I.      Background

Mahmoud Isleem is an immigrant living lawfully in the United States. (Rec. Doc. 1, ¶ 12). Desiring to register for permanent resident status or otherwise adjust his status, Isleem filed a Form I-485 with USCIS. (*Id.* ¶ 1). Concurrently, his wife, Sandra Anderson, filed a Form I-130, Petition for Alien Relative, which would establish a relationship between Anderson and Isleem such that he could stay in the United States permanently and apply for a Permanent Resident Card. (*Id.* ¶ 24); *Form I-130, Petition for Alien Relative*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/i-130. In light of these filings, Isleem's presence was required at the USCIS New Orleans Field Office for the purposes of an administrative hearing and interview. (*Id.* ¶ 29). At this interview, the interviewer asked Isleem each question on the Form I-

1

485. (*Id.* ¶ 33). Both Isleem's attorney, Michael Gahagan, and Anderson attended the interview. (*Id.* ¶ 31).

As DeCuir asked the I-485 questions line-by-line, Isleem was provided translations of the questions by a government-contracted Arab translator. (*Id.* ¶ 33). At question seventeen, Isleem indicated that the question was being translated in a way that was "nonsensical." (*Id.* ¶ 36). Ultimately, Gahagan orally instructed Isleem to answer the question in the affirmative, which would match Isleem's answer on the I-485 form. (*Id.* ¶¶ 35-36). DeCuir notified Gahagan that he could not speak or advise his client during the interview, at which time Gahagan requested to speak to a supervisor. (*Id.* ¶¶ 38-39). Sandra Peacock then entered, agreed with DeCuir, and notified Gahagan that, pursuant to agency rule,[1] he could not orally advise his client how to answer, and that, if he did so again, she would file a bar complaint against him. (*Id.* ¶¶ 40-42). DeCuir then asked Isleem question seventeen again, which he answered in the affirmative. (*Id.* ¶ 46). She read the remainder of the form and ultimately returned to question seventeen, at which time Gahagan again orally advised Isleem to answer in the affirmative, disregarding the previous admonition from the agency representatives. (*Id.* ¶ 47). DeCuir proceeded to ask Anderson questions from the I-130 form, and the interview concluded. (*Id.* ¶ 48).

Following various evidentiary requests, the defendants approved Anderson's I-130 petition.[2] (*Id.* ¶¶ 49-51). However, Isleem claims that the defendants have refused to adjudicate

---

[1] The USCIS Field Policy Manual, § 12.4, states that "[a]n attorney or representative may not respond to questions the USCIS officer directs to the applicant, petitioner, or witness, except to ask the USCIS officer to clarify the question asked."

[2] Anderson's I-130 was granted, thus establishing her relationship with Isleem and providing him the opportunity to apply for a Permanent Resident Card, colloquially known as a green card. *See I-130, Petition for Alien Relative*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/i-130. The I-485 operates to adjust the status of an individual, and may be filed concurrently with an underlying immigrant visa petition, in this case, Anderson's I-130. *See Concurrent Filing of Form I-485*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/green-card/green-card-processes-and-procedures/concurrent-filing-of-form-i-485. However, "[t]he approval of [the Form I-130 petition] does not in itself grant any immigration status and

his I-485, which he asserts violates his rights under the Administrative Procedure Act, among other statutes, and the Constitution. (*Id.* ¶ 53). Isleem alleges that although he has issued repeated requests to USCIS, the defendants have refused to adjudicate his Form I-485 in bad faith. (*Id.* ¶¶ 54, 57).

In light of these events, and not having received an adjudication of his I-485, Isleem, joined by his attorney, Michael Gahagan, and Gahagan's employer, Gahagan Law Firm, L.L.C., now requests various remedies, including injunctive relief, mandamus relief, and declaratory relief. The causes of action are brought under the Immigration and Naturalization Act, the Administrative Procedure Act, the Mandamus Act, Title 8 of the Code of Federal Regulations, the Fifth Amendment, and the First Amendment. In response, the defendants have moved to dismiss the suit, asserting that this Court lacks subject-matter jurisdiction over the actions of the agency because Congress divested it of jurisdiction in the INA and that Gahagan and his law firm lack standing to challenge constitutional rights on behalf of Isleem. The defendants further assert that the complaint fails to state a claim upon which relief can be granted. The Court considers these challenges below.

## II.    Legal Standard

### 1.   12(b)(1)

A motion filed pursuant to Rule 12(b)(1) raises the defense of lack of subject-matter jurisdiction. Fed. R. Civ. Pro. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Lack of subject-matter jurisdiction may be founded on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

---

does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status." (Rec. Doc. 9-8, at 2).

*Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Ultimately, such a motion to dismiss should be granted only if it appears that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief. *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

For this Court to entertain the statutory causes of action, there must be a valid claim under a federal statute that provides an independent right of action. The Administrative Procedure Act does not, by itself, grant subject-matter jurisdiction to review agency action or inaction. *Califano v. Sanders*, 430 U.S. 99, 105 (1977). The same is true of writs of mandamus, which may "issue only in aid of jurisdiction acquired to grant some other form of relief." *Stern v. S. Chester Tube Co.*, 390 U.S. 606, 608 (1968). Therefore, for this Court to have subject-matter jurisdiction over either the APA or the Mandamus Act claim, there must be an independent basis by which Isleem may challenge agency inaction to secure relief.

### 2. 12(b)(6)

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."

4

*Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 556 U.S. at 679)).

In the context of a motion to dismiss, the district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Lovick v. Ritemoney, Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004)). However, the foregoing tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. Thread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor. *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001) (citing *Burchett v. Cargill, Inc.*, 48 F.3d 173, 176 (5th Cir. 1995)).

### III.    Discussion

The defendants have moved to dismiss all causes of action under Rules 12(b)(1) and 12(b)(6). In opposition, Isleem has not addressed all of his causes of action, instead primarily focusing on his claims under the APA, Title 8 of the Code of Federal Regulations, the Fifth Amendment, and the First Amendment.

*1.   Immigration and Naturalization Act*

First, Isleem argues that, under the INA, the defendants "have a clear duty" to adjudicate his Form I-485. (Complaint, Rec. Doc. 1, ¶ 93). While the claim for relief does not expand on this duty significantly, Isleem's cause of action essentially asserts that the INA mandates that the adjudication of such status changes occur within a certain amount of time. In support of their motion to dismiss, the defendants argue that this Court has no jurisdiction under the INA.

The INA specifically provides that particular actions (or inactions) that fall within the discretion of the Attorney General or Secretary of Homeland Security are *not* subject to judicial review. 8 U.S.C. § 1252 reads as follows:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 [the Mandamus Act] and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be *in the discretion of the Attorney General or the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(B) (emphasis added). The sole exclusion from this sweeping divestment of judicial authority appears in subsection (D), which permits review "of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(D).

The statutory provision for adjustment of status—to which Form I-485 is directly related—provides as follows:

> The status of an alien who was inspected and admitted or paroled into the United States or the status of any other alien having an approved petition for classification as a VAWA self-petitioner may be adjusted by the Attorney General, *in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added). Accordingly, by the statutory language, the determination for adjustment of status falls within the discretion of the Attorney General. However, for the jurisdiction-stripping provision of section 1252 to apply, there must be a decision or action by

6

the Attorney General. 8 U.S.C. § 1252(B). Fifth Circuit precedent suggests that this Court is without jurisdiction to act.

Recently, the Fifth Circuit determined whether section 1255 divests federal courts of jurisdiction in status adjustment decisions. Specifically, the court noted that the provision "expressly leaves not only the ultimate *decision* to adjust an applicant's immigration status but also actions taken in the course of the decision-making *process*—including the pace at which that process is undertaken—to the discretion of the Attorney General." *Cheetaji v. Blinken*, 106 F.4th 388, 394 (5th Cir. 2024). Favorably citing an unpublished opinion, the *Cheetaji* court stated that "the pace of USCIS's adjudication is left to its discretion, with 'no clear mandate' requiring USCIS to act within a certain timeframe." *Id.* (quoting *Li v. Jaddou*, No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. May 12, 2023)). Therefore, the court determined that the discrete acts underlying the adjustment decision "*and the timing of those acts*" are both within the Attorney General's discretion and therefore may not be reviewed by federal courts. *Id.* (emphasis added).

In further support, the *Cheetaji* court cited with approval an opinion that had been vacated on mootness grounds, which held that federal courts lack jurisdiction to review the pace of adjudication because the word "action" in 12 U.S.C. § 1252(B)(ii) "would be superfluous if the provision stripped the courts of jurisdiction to review only final, discrete decisions." *Id.* (citing *Bian v. Clinton*, 605 F.3d 249, 253-54 (5th Cir. 2010)). Therefore, for the purposes of the INA, inaction qualifies as part of the process under the statute. *See id.* Although *Cheetaji* specifically dealt with the pace of adjudication with respect to retrogression dates, the language in *Cheetaji* is clear: where pace of adjudication is at issue for a discretionary action by the Attorney General, federal courts lack jurisdiction to hear the issue.

Accordingly, because the INA strips this Court of jurisdiction to review the decisions of the Attorney General in this matter, the claim under the INA is **DISMISSED WITHOUT PREJUDICE**.

2. *Administrative Procedure Act*

Isleem next asserts that the defendants violated a series of provisions under the APA, which boil down to claims that the defendants prevented Isleem from exercising his statutory right to representation at his interview and that the defendants have refused to adjudicate his Form I-485, thus qualifying as an unreasonable failure to act in violation of the APA.

A. Representation at Interview

Isleem's complaint details the entitlement to counsel at particular agency hearings, asserting that the interview was compulsory, thus triggering a right to representation by counsel. (Rec. Doc. 1, ¶¶ 77-82). He alleges that despite his right to representation and advice by counsel, the defendants intentionally interfered with Gahagan's right to represent and advise Isleem. (*Id.* ¶ 82). In their motion to dismiss, the defendants assert that the INA comprehensively covers immigration and naturalization and is not superseded by the APA. Since the INA provides no right to counsel for adjustment interviews, they argue that there is no statutory right at issue. In the alternative, they argue that the meeting was not compulsory and therefore no right to counsel existed under the APA. Finally, the defendants argue that the right to counsel does not provide the right to be coached. Isleem's opposition largely repeats the complaint's allegations, but also argues that the interview was, in fact, compulsory, that Gahagan was merely advising Isleem, and that the defendants have now retaliated against Isleem by refusing to adjudicate his I-485.[3]

_____

[3] The Court considers this challenge exclusively as it relates to Isleem. The complaint appears to assert this right on behalf of each of Isleem, Gahagan, and Gahagan Law Firm, L.L.C. Specifically, it notes that Gahagan and his law firm had "a statutory right" to represent Isleem. (Rec. Doc. 1, ¶¶ 81-82). The complaint is not specific as to the harm suffered by Gahagan and his firm in that section, but the complaint does note

First, this Court agrees with the defendants that the INA does not independently provide any right to counsel, nor does the APA supersede the INA in creating a right to counsel. The INA was enacted in 1952, designed to be a "comprehensive federal statutory scheme for regulation of immigration and naturalization." *Chamber of Com. of the U.S. v. Whiting*, 563 U.S. 582, 587 (2011) (quoting *De Canas v. Bica*, 424 U.S. 351, 353 (1976)). The INA's expansiveness and reach was, however, subject to questioning early in its history. In 1950, the Supreme Court "concluded that immigration proceedings were subject to the APA." *Ardestani v. I.N.S.*, 502 U.S. 129, 133 (1991) (emphasis omitted) (citing *Wong Yang Sung v. McGrath*, 339 U.S. 33 (1950)). Soon thereafter, Congress legislatively overruled that decision in a statutory rider. *Id.* Congress then repealed that rider and passed the INA. *Id.* In determining the INA's effect on the APA, and considering Congressional tides shifting back and forth regarding its impact on the APA, the Court held in 1955 that the INA supplanted the APA in immigration proceedings. *Id.* Specifically, the Court "held that the INA 'expressly supersedes' the hearing provisions of the APA" in light of several considerations. *Id.* at 133-34 (quoting *Marcello v. Bonds*, 349 U.S. 302, 310 (1955)).

Faced with a similar issue in *Ardestani*, the Court determined that the petitioner's deportation proceeding was not subject to the APA "and *thus not governed* by the provisions of §

---

that they both "suffer irreparable harm each day that they are not allowed to effectively represent their clients during compulsory federal administrative hearings" at this field office. (*Id.* ¶ 74).

For Gahagan and his firm to have standing, they must satisfy the test for constitutional standing provided in *Lujan*: (1) an injury-in-fact, which must be concrete and particularized and actual or imminent; (2) a causal connection between the injury and the conduct; and (3) the injury must be redressable. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). This Court is not persuaded that Gahagan and his law firm have demonstrated that they have standing to assert Isleem's right, as they have shown no injury. Further, they cannot state a claim for themselves. The right to counsel asserted in the complaint—from the APA—guarantees a right to counsel *to an individual compelled* to appear. There is no similar right to the attorney to *provide* that counsel. The right must be asserted by the individual receiving counsel—in this case, Isleem. There is no legally cognizable injury as it relates to Gahagan or his firm and, therefore, neither he nor his firm has standing to assert this claim.

554." *Id.* at 134 (emphasis added). While *Ardestani* considered deportation proceedings under section 554—not section 555, which is at issue here—the Court made various findings suggesting that the INA displaces the APA beyond that single provision. For instance, the Court found that it was immaterial that the Attorney General had attempted to conform deportation hearings with APA provisions, and noted that nothing in *Marcello* left open "the possibility that the APA should displace the INA in the event that the regulations governing immigration proceedings become functionally equivalent" to APA procedure. *Id.* It would defy logic that, for the purposes of deportation proceedings, the INA supersedes the APA, but for interviews conducted pursuant to status adjustment requests, the APA would apply over the INA.

The INA affirmatively provides for a right to counsel in particular proceedings, including removal proceedings. *See, e.g.*, 8 U.S.C. §§ 1225(b)(1)(B)(iv), 1228(b)(4)(B), 1362. Conversely, 8 U.S.C. § 1255 does not have any provision allowing for counsel—perhaps because it does not present the individual with imminent removal. Regardless of the reasoning behind the lack of a counsel provision in section 1255, it is a well-settled principle that "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 389 (2015) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)). Not only was a right to counsel not included in this section of the same act, but section 1255 falls within the same subsection of the Code. Congress's failure to incorporate a statutory right to counsel here suggests that no such right exists under the INA or APA.[4] Therefore, there is no violation of the APA, because the INA's provisions control in this setting, and no right to counsel is provided for.

---

[4] The plaintiffs also assert a constitutional challenge to procedural due process under the lens of the right to counsel and a claim under the Code of Federal Regulations. The Court considers those causes of action later in this Order.

In the event the INA does not take precedence over the APA with respect to the right to counsel in this instance, the Court has also reviewed the right to counsel under the APA to determine whether (1) such a right existed for this particular interview and (2) if so, whether the right was abridged. The APA provides that, where an individual is "compelled to appear in person before an agency or representative thereof," the individual is entitled to representation and advice by counsel. 5 U.S.C. § 555(b). The word "compel" typically suggests that there is some mandate by which an individual is summoned to appear before the governmental body. *See, e.g.*, *Becker v. C.I.R.*, 275 F.2d 141, 142 (5th Cir. 1960) (compelled by subpoena); *Doe v. McAleenan*, 415 F. Supp. 3d 971, 975 (S.D. Cal. 2019) (held in custody awaiting non-refoulement interviews for asylum); *Pro. Reactor Operator Soc'y v. U.S. Nuclear Regul. Comm'n*, 939 F.2d 1047, 1049 (D.C. Cir. 1991) (compelled by subpoena); *United States v. Weiner*, 578 F.2d 757, 773 (9th Cir. 1978) (under SEC investigation); *Great Lakes Screw Corp. v. Nat'l Lab. Rels. Bd.*, 409 F.2d 375, 377-78 (7th Cir. 1969) (investigation following antifraud violations). As displayed by these cases from around the country, this provision is typically invoked—hand in hand with a constitutional allegation, as is set forth here—when an individual, subpoenaed or mandated to appear before a tribunal, is denied assistance of counsel.[5]

In this case, Isleem voluntarily applied to the government for relief, and he was provided notice of his interview. (Rec. Doc. 1, ¶ 29). However, the language suggests that his attendance was compelled:

> You are hereby ordered to appear for the interview appointment, as scheduled below, for the completion of your Application to Register Permanent Residence or Adjust Status (Form I-485) and any supporting applications or petitions. Unless your interview is rescheduled, failure to appear for this interview and/or failure to bring the below listed items will result in the denial of your application.

---

[5] "Compel" means "[t]o cause or bring about by force, threats, or overwhelming pressure." *Compel*, *Black's Law Dictionary* (12th ed. 2024). A subpoena clearly qualifies under this definition, as there is a threat of being held in contempt of the tribunal.

(*Id.*). Certainly, language "order[ing]" Isleem's appearance suggests that the interview was compulsory. Further, the "threat" was one of denial of his application. In this Court's view, the interview was compulsory because failure to attend would result in termination of his adjustment request.

Regardless, counsel was permitted by USCIS to attend and did in fact attend, so Isleem's purported right under the APA was not violated unless he was prevented from receiving advice during the interview. The plaintiffs assert that, by threatening a bar complaint against Gahagan and stating that he could not orally advise Isleem to state "yes," Isleem was denied the right to counsel. The Court disagrees for two reasons. As an initial matter, the interview did not terminate at that time; after both instances of Gahagan's advice to Isleem, the interview continued such that Isleem actually answered in accordance with the advice. Secondly, the statements Gahagan made to Isleem do not fall within the statute. The statute permits an individual to be accompanied, represented, and advised by counsel. 5 U.S.C. § 555(b). However, much as is the case in a deposition or live testimony, or proceedings before the Court in which an individual testifies, the right to counsel certainly does not include the ability to instruct a client how to answer.[6]

Finally, case law suggests that the actions taken in this proceeding did not rise to the level of a violation. *See, e.g.*, *Nees v. S.E.C.*, 414 F.2d 211 (9th Cir. 1969) (finding that lack of

---

[6] Similarly, the interview process appears to be under oath. *Cf. Chapter 5 – Interview Guidelines*, U.S. Citizenship & Immigration Servs., https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-5 (requiring interpreters to take an oath). Sworn testimony must come from personal knowledge, not from answers provided by counsel. *See, e.g.*, *Perry v. Leake*, 488 U.S. 272, 282 (1989) (noting that "unethical 'coaching'" may impede the truth-seeking function of trial); *United States v. Padilla*, 203 F.3d 156, 160 (2d Cir. 2000) ("When the defendant acts as a witness, the court may impose reasonable restrictions on his communication with counsel to prevent improper coaching and to ensure the integrity of the trial's truth-seeking function." (citing *Perry*, 488 U.S. at 282)).

representation did not violate the right to counsel when he had the opportunity to employ counsel beforehand); *cf. Great Lakes Screw Corp.*, 409 F.2d at 379 (finding that contemptuous behavior is necessary to exclude an attorney, and that exclusion for lesser activity violates the right). Here, Peacock made clear that the USCIS's procedural policy did not permit spoken advisement during the course of the interview—*i.e.*, informing Isleem how he should answer—and that Gahagan must stop. Gahagan was never ordered to leave. The interview was not terminated. All of Isleem's answers were ultimately accepted by DeCuir. Under the APA's counsel provision, these allegations are insufficient to state a cause of action for failure to permit the exercise of Isleem's right to counsel. Therefore, this APA cause of action is **DISMISSED**.

    B.  <u>Failure to Act</u>

The plaintiffs also assert that the defendants have refused to adjudicate Isleem's I-485, which they argue is a violation of the APA. (Rec. Doc. 1, ¶ 83 (citing 5 U.S.C. §§ 555(b), 706(1))). The relevant portion of section 706 states that a reviewing court shall decide all relevant questions of law and, ultimately, shall "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions" which are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1)-(2). For the reasons that follow, Isleem's claim under the APA fails.

Under the APA, individuals who suffer injury may seek judicial review through a statute creating an enforceable right. 5 U.S.C. § 702. This agency action includes failure to act. 5 U.S.C. § 551(13). However, where agency action is "committed to agency discretion by law," a court may not compel agency action. 5 U.S.C.§ 701(a)(2). For an unreasonable delay claim to proceed, there must be a discrete agency action—one required by statute within a reasonable amount of

time—that was not taken. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). This is in line with the APA's exclusion of discretionary agency decisions. Indeed, "even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Rather, that statutory directive is considered to have "'committed' the decisionmaking to the agency's judgment absolutely." *Id.* Finally, for such a claim to succeed, the underlying agency inaction must be enforceable from another statute, because the APA does not grant subject-matter jurisdiction to review inaction without another statutory right to enforcement. *Califano*, 430 U.S. at 105.

The law, as described above, bars Isleem's claim. First, the statute providing for adjustment of status is facially discretionary. The statute states that the Attorney General "may" adjust the individual's status "in his discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a). Therefore, under the Supreme Court's *Norton* standard, there is no discrete agency action. However, crucially, the APA's requirement of the existence of a separate private right of action is an impediment to a successful claim. As described above, 8 U.S.C. § 1252(B) strips this Court of jurisdiction to review any decision or action of the Attorney General that is discretionary. Therefore, this Court lacks jurisdiction to adjudicate this cause of action because there is no underlying right to action as required by *Califano*.

Accordingly, this APA cause of action is **DISMISSED WITHOUT PREJUDICE**.[7]

---

[7] The plaintiffs raise in opposition, for the first time, a claim under their APA heading that Isleem and USCIS entered a contract when Isleem paid $1,225 to submit his Form I-485 application. (Rec. Doc. 9-2, at 3-4). They argue that the contract demands that USCIS "adjudicate and issue an order" on the form. (*Id.* at 6). This breach of contract claim does not appear anywhere in the complaint and is improperly introduced as a new cause of action in opposition to the defendants' motion to dismiss. Therefore, it must fail. However, for other reasons, this cause of action would be unsuccessful.

The United States has waived sovereign immunity for contract claims through the Tucker and Little Tucker Acts. 28 U.S.C. §§ 1491, 1346(a)(2). The Little Tucker Act provides jurisdiction to district courts

3. *Mandamus Act*

Isleem's complaint also references the Mandamus Act and requests mandamus relief, but does so only fleetingly. The complaint states that Isleem requests mandamus relief (Rec. Doc. 1, ¶ 1), that this Court has jurisdiction under the Mandamus Act (Rec. Doc. 1, ¶ 20), and that this Court may order a remedy when the plaintiff demonstrates that (1) he has a clear right to the relief requested; (2) the defendant has a clear duty to perform the act in question; and (3) no other adequate remedy is available. (Rec. Doc. 1, ¶ 63). No formal cause of action is stated for mandamus relief, but this Court considers this claim nonetheless.

The Mandamus Act provides original jurisdiction "of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Writs of mandamus are "extraordinary remed[ies]," *Adams v. Ga. Gulf Corp.*, 237 F.3d 538, 542 (5th Cir. 2001), to be granted only "in the exercise of . . . sound judicial discretion." *Duncan Townsite Co. v. Lane*, 245 U.S. 308, 311 (1917). For mandamus jurisdiction to exist, "[a] plaintiff must show a clear right to the relief sought, a clear duty by the defendant to do the particular act, and that no other adequate remedy is available." *Green v. Heckler*, 742 F.2d 237, 241 (5th Cir. 1984). Further, the claim must be "clear and certain and the duty of the officer ministerial and so plainly prescribed as to be free

_____

over claims that are less than $10,000 in amount, as is the case here. *Id.* § 1346(a)(2). For sovereign immunity to be waived, the waiver must be "unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969). Accordingly, to show waiver, the plaintiffs must demonstrate that the alleged contract "can be fairly interpreted as *mandating* compensation by the Federal Government for the damages sustained." *Vargas v. U.S. Dep't of Homeland Sec.*, No. 13-21, 2014 WL 12673693, at *12 (S.D. Tex. Jan. 7, 2014) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)). Of course, contract liability under the Tucker Act cannot extend to every agreement or understanding that would qualify as a meeting of the minds. *Id.* While there may be jurisdiction for contracts implied in fact, there is no jurisdiction under the Little Tucker Act for contracts implied in law. *Hercules Inc. v. United States*, 516 U.S. 417, 423 (1996).

Here, the allegations suggest that any potential contract was implied in law—that is, that "the law imputed a promise to perform a legal duty." *Vargas*, 2014 WL 12673693, at *12. There is no evidence provided that the government has elected to expressly or unequivocally waive its sovereign immunity in this case. Therefore, the claim must fail.

from doubt." *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992). Much like APA

claims, a writ of mandamus may "issue only in aid of jurisdiction acquired to grant some other

form of relief." *Stern*, 390 U.S. at 608.

This Court has previously found that mandamus relief is inappropriate in the context of

failure to act claims under the INA and APA because relevant provisions of the underlying

statute preclude judicial relief and the action complained of is discretionary rather than

ministerial. *Salar v. U.S. Citizenship & Immigr. Servs.*, No. 23-1997, 2023 WL 8716579, at *4

(E.D. La. Dec. 18, 2023) (Zainey, J.). The same is true here. First, *Green*'s requirement of the

existence of a clear right is not met—this Court's jurisdiction is stripped by the statute through

which Isleem seeks to enforce his request. Further, and more crucially, the statute providing for

adjustment of status is discretionary. 8 U.S.C. § 1252(B). Ministerial acts, by definition, involve

"obedience to instructions or laws *instead of discretion, judgment, or skill*." *Ministerial*, *Black's

Law Dictionary* (12th ed. 2024) (emphasis added). As described at length above, Isleem does not

have a private right to action under this statute due to its jurisdiction stripping provisions;

however, to the extent that the divestment of jurisdiction does not preclude mandamus relief, the

action sought to be compelled is not ministerial. Accordingly, mandamus relief may not be

granted under the Mandamus Act, and this claim must be **DISMISSED**.

   *4. Title 8 of the Code of Federal Regulations*

Isleem's challenge to his right to counsel, as noted above, extends beyond his claim under

the APA and the Fifth Amendment—his complaint also challenges the defendants' actions under

Title 8 of the Code of Federal Regulations, asserting that there is a regulatory right to effective

attorney representation during all compulsory examinations. (Rec. Doc. 1, ¶ 85). He argues that

several regulatory rights are triggered by this provision and that the defendants violated multiple

of those rights when they informed Gahagan that he could not orally advise Isleem how to answer specific questions during the interview. (*Id.*). In their motion to dismiss, the defendants assert that the right to counsel was not abridged because Gahagan was permitted to remain during the interview and, further, that the prevention of Gahagan's oral advice was pursuant to the USCIS Adjudicator Field Policy Manual.

8 C.F.R. § 103.2(a)(3) states that "[a]n applicant or petitioner may be represented by an attorney in the United States." While other portions of section 103.2 appear to discuss forms *or* benefit requests, subsection (3) only implicates benefit requests and petitions. The Court is satisfied that an adjustment of status request falls within the regulatory definition of "benefit request," which includes "any application, petition, motion, appeal, or other request relating to an immigration or naturalization benefit." 8 C.F.R. § 1.2. Therefore, a generic regulatory right to counsel exists under 8 C.F.R. § 103.2(a). The plaintiffs also assert that another right exists under section 292.5. 8 C.F.R. § 292.5 provides as follows:

> Whenever an examination is provided for in this chapter, the person involved shall have the right to be represented by an attorney or representative who shall be permitted to examine or cross-examine such person and witnesses, to introduce evidence, to make objections which shall be stated succinctly and entered on the record, and to submit briefs.

8 C.F.R. § 292.5(b). Despite the difference in language between "interview" and "examination," USCIS policy directly states that an interview is an examination. *See USCIS Field Policy Manual*, § 12.4 (entitled "Interviews" and discussing the right to representation at "examination[s]"). Accordingly, the section 292.5 right to counsel exists here. Context dictates that some of the rights set forth in section 292.5 are not applicable in this setting, but the regulatory right to representation is to be provided at interviews such as Isleem's.

The right to representation at these interviews is tailored by the Policy Manual. USCIS issued section 292.5, which is analyzed by the same agency's Policy Manual.[8] The regulation itself does not fully define the right to representation—it allows the representative to take certain acts, but section 292.5 does not expressly define the scope of the right. However, the Policy Manual explicitly describes the scope of the right, stating that "[a]n attorney or representative may not respond to questions the USCIS officer directs to the applicant, petitioner, or witness, except to ask the USCIS officer to clarify the question asked." *Id.* § 12.4. Therefore, the USCIS officers were authorized to prevent Gahagan from telling Isleem how to answer.[9]

The regulatory right to representation, by its nature, incorporates a right to be advised. Gahagan was permitted to attend and advise his client. However, the right to representation is also limited by 8 C.F.R. § 292.3, which governs professional conduct for practitioners in such proceedings. Specifically, a practitioner may be sanctioned by an adjudicating official where a

---

[8] The Policy Manual's purpose is to "provide[] transparency of immigration policies" and to "further[] consistency, quality, and efficiency consistent with the USCIS mission." *Policy Manual*, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/policy-manual. Specifically, it "provides all the latest policy updates" and "contains the *official policies* of USCIS and assists immigration officers in rendering decisions." *Id.* (emphasis added). Further, it "is to be followed by all USCIS officers in the performance of their duties but it does not remove their discretion in making adjudicatory decisions." *Id.* Finally, the manual "does not create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." *Id.*

[9] The Court notes the potential application of the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, in which the landmark *Chevron* decision was overruled. 144 S. Ct. 2244 (2024). *Raimondo* reads as follows: "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry." *Id.* at 2273. However, "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* As described above, this Court finds that the INA itself provides no right to counsel in this instance. However, the regulation promulgated by USCIS is ambiguous in that it fails to define the scope of the regulatory right to counsel. That ambiguity is clarified in the USCIS Field Policy Manual. To the extent that *Raimondo* applies in this instance, this Court finds that USCIS's interpretation of the regulation is reasonable and within its authority. *See* 8 U.S.C. § 1103(a)(2)-(3) (permitting regulations as the Secretary of Homeland Security finds necessary to carry out his authority under the chapter and providing control and direction of all employees of the INS). The USCIS policy at issue bars an attorney from answering on behalf of their client. Such a regulation is within the authority of the agency, as it promotes the truth-seeking function of the interview and the legitimacy of such adjudications and falls within the statutory grant to the agency.

practitioner is engaged in certain conduct set forth in another regulatory provision. The adjudicator may expel, suspend, censure, or otherwise sanction the practitioner as appropriate. 8 C.F.R. § 292.3. Grounds for sanction include "engag[ing] in contumelious or otherwise obnoxious conduct" which would result in contempt of court in a proceeding before a tribunal, and "engag[ing] in conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process," which includes acts that interfere with the adjudicative process "when the practitioner should have reasonably known to avoid such conduct." 8 C.F.R. § 1003.102(g), (n). This Court believes that, under the regulatory scheme set forth above, USCIS's employees were within their rights to warn Gahagan from counseling Isleem exactly how to answer.[10] There are no allegations that Gahagan was otherwise precluded from advising Isleem during his application process or from advising Isleem as permitted under the regulatory structure; he was merely prevented from answering on his client's behalf, an act which would undermine the integrity of the adjudicative process.

Accordingly, the cause of action set forth under Title 8 of the Code of Federal Regulations is **DISMISSED**.

5.  *Fifth Amendment*

Isleem argues that the defendants' conduct violated his right to due process under the Fifth Amendment of the Constitution. Specifically, his complaint alleges that the refusal to allow his attorney to advise and represent him denies him the right to procedural due process under the

---

[10] However, under USCIS's own Policy Manual, Peacock's threat was extremely inappropriate. The manual explicitly states that "USCIS employees may not file complaints directly to state bar disciplinary authorities." *USCIS Field Policy Manual*, § 12.5. While the threat did not violate law—the manual creates no procedural or substantive cause of action and Peacock is not alleged to have contacted the state bar— the Court notes the USCIS policy would prevent such a complaint.

Constitution, and the refusal to adjudicate the application denies the right to both due process and equal protection. The Court addresses each below.

    A.  <u>Due Process</u>

Isleem first argues that his right to due process was violated by the defendants' alleged refusal to allow Gahagan to represent him during the interview. The plaintiffs allege that, by paying $1,225 to file his application, a property interest is implicated by USCIS's failure to adjudicate. They further assert that the agency proceeding was unfair, and that Isleem "has a liberty interest in not being thrown into deportation proceedings and possibly deported at the whim of a personally offended federal government employee." (Rec. Doc. 9-2, at 14). For the reasons that follow, the plaintiffs have failed to state a claim for violation of the Fifth Amendment Due Process Clause.

The Fifth Amendment states that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The language expressly requires that an individual be deprived of a life, liberty, or property interest for the Fifth Amendment to be triggered; in this case, neither life nor property is at issue.[11] Therefore, the sole question is whether Isleem has a liberty interest in an adjustment of status. The Fifth Circuit has previously found that there is no liberty interest with respect to adjustment of status. *See Ahmed v. Gonzales*, 447 F.3d 443, 440 (5th Cir. 2006) ("This circuit has repeatedly held that discretionary relief from removal, *including an application for an adjustment of status*, is not a liberty or property right that requires due process protection." (emphasis added)); *Nyika v. Holder*, 571 F.

---

[11] While Isleem has asserted that he has a property interest in the money provided alongside his application, he has not been deprived of his property. Rather, he voluntarily sent the money to USCIS along with his application for an adjustment of status. Much as it would not be a deprivation of property for this form to be rejected, a failure to complete adjudication within an undescribed period of time—which is statutorily discretionary—is not a deprivation of property.

App'x 351, 352 (5th Cir. 2014) (per curiam); *cf. Asaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (finding that there is no right to due process where there is a failure to provide purely discretionary relief). As described above, the amount of time it takes to adjudicate the application is within the discretion of the Attorney General. Further, it is not denied that Isleem received a full interview with respect to his Form I-485, and that the interview was not terminated upon his attorney's advising him. While the plaintiffs have asserted that the failure to adjudicate is in retaliation to Gahagan's oral advice during the interview, there is no indication from the interview that Gahagan's oral advice was held against Isleem, nor are there any factual allegations substantiating such a retaliation claim. Indeed, the facts demonstrate that only Gahagan faced any potential punishment for the oral advice. Accordingly, because there is no liberty interest at stake, and because there are insufficient allegations that due process was violated, this claim must fail.

Isleem has also asserted that his Fifth Amendment right to due process was violated when USCIS interfered with his right to counsel. Specifically, "the absence of an attorney may create a due process violation if the defect 'impinged upon the fundamental fairness of the hearing in violation of the [F]ifth [A]mendment,' and there was substantial prejudice." *Ogbemudia v. INS*, 988 F.2d 595, 598 (5th Cir. 1993) (first quoting *Paul v. United States INS*, 521 F.2d 194, 198 (5th Cir. 1975), and then citing *Patel v. United States INS*, 803 F.2d 804, 807 (5th Cir. 1986)). While the case law suggests that the Fifth Amendment issue typically arises where an attorney is absent, the Court will assume for the purposes of this motion that it includes occasions where the attorney is limited in appropriate representation techniques.

This Court holds that USCIS's actions did not reach the level of impinging upon fundamental fairness of the hearing, or that there was substantial prejudice. As described at

length, Gahagan was not excluded from the interview room. While Peacock's statement may have suggested all oral advice was barred, it was clearly in response to instances in which Gahagan orally advised Isleem exactly how to answer the question. There were alternative courses of representation available, including asking the interpreter to explain the question in a different way or for DeCuir to clarify the question. Regardless, Isleem was not substantially prejudiced. As noted above, the plaintiffs have asserted retaliation, but there was no suggestion from USCIS that its failure to adjudicate has been in response to Gahagan's actions.[12] Gahagan was threatened, but the threat was never expressed against Isleem's opportunity to have his application adjudicated in a fair manner. Additionally, and as mentioned above, there is no accompanying liberty interest. Accordingly, this claim must also fail.[13]

        B.  Equal Protection

        Isleem also asserts that the refusal to adjudicate his Form I-485 application denies him the right to equal protection of the law as guaranteed by the Fifth Amendment of the Constitution. While the Fifth Amendment does not have a separate and distinct equal protection clause, the guarantees of the Fourteenth Amendment equal protection clause have long been read into the Fifth Amendment's due process clause. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217-19 (1995) (collecting cases); *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). "Fifth Amendment equal protection claims against federal actors are analyzed under the same standards as Fourteenth Amendment equal protection claims against state actors." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)).

---

[12] In fact, in their motion to dismiss, the defendants noted that the answers to some questions have been consequential to the adjudication. (Rec. Doc. 8-1, at 3 n.4).

[13] The Court notes that the government provided information with respect to a violation under the Sixth Amendment for right to counsel. Although Isleem did not allege such a violation, it would have failed because Gahagan was entitled to accompany Isleem to the interview and because the Sixth Amendment does not apply to immigration proceedings. *Ogbemudia v. INS*, 988 F.2d at 598.

To establish a claim for equal protection, a plaintiff must demonstrate that "two or more classifications of similarly situated persons were treated differently" under the law. *Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (quoting *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012)). This is a "threshold element" that must be proven before the court determines the scrutiny that applies. *Id.* Here, Isleem has provided no other classifications that were treated differently; he merely asserts that the refusal to adjudicate his particular application violates equal protection. This alone is insufficient to state a claim.

Accordingly, his causes of action asserted under the Fifth Amendment are **DISMISSED**.

*6. First Amendment*

Finally, the complaint asserts a violation of the First Amendment with respect to all three plaintiffs, specifically stating that the defendants' refusal to allow them to communicate with one another as attorney and client "without threats of Plaintiff Attorney Gahagan being the target of an ethics disciplinary complaint filed by a federal agency employee" violates their freedom of speech. (Rec. Doc. 1, ¶ 95). In response, the government argues that there is no connection to "any concrete prejudice" because "there was no impediment to Plaintiff Isleem's ability to hire and have the benefit of Attorney Gahagan's presence during the interview." (Rec. Doc. 8-1, at 19-20). In essence, the defendants argue that the plaintiffs have failed to show that they have standing to assert a right under the First Amendment.

This Court does not believe it is necessary to make a standing finding because the plaintiffs have failed to state a claim. The adjudicator has a duty to ensure that the questions are answered properly and that inappropriate interjections and interference do not occur. There is no legitimate argument that the restriction here—informing an individual subject to an adjustment of status interview exactly how to answer—was enforced in such a manner that it constituted

viewpoint discrimination. Rather, it was clear that, despite the truth of the answer (which matched Isleem's answer on the form), USCIS took issue with the interruption of the one-on-one interview. Such a restriction is clearly reasonable and advances a legitimate government interest in the truth-seeking function and legitimacy of such adjudicatory interviews.[14] Much as lawyers may only speak at particular times in official judicial proceedings and are limited in the content of what they may say, an adjudicator at an agency must have discretion to preclude inappropriate communication by an attorney during such interviews.

Because the plaintiffs cannot state a claim as to a violation of the First Amendment, this cause of action is **DISMISSED**.

Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 8)**, filed by all defendants, is **GRANTED**. The cause of action stated under the INA and the failure to act cause of action under the APA are each **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. All other causes of action are **DISMISSED WITH PREJUDICE**.

August 20, 2024

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[14] The Court acknowledges that the character of the property often dictates First Amendment challenges, and therefore is typically an initial determination made in such an analysis. *See Chiu v. Plano Indep. School Dist.*, 260 F.3d 330, 344 (5th Cir. 2001). Having considered the situation under the limited set of facts provided, this Court is satisfied that regardless of the forum designation, this regulation would be permissible.